SMITH, Chief Judge.
The plaintiff-appellant, Esther M. Durham (also known as Esther M. Ellis) brought suit in chancery to foreclose a purchase money note and mortgage and for an accounting and other relief. She appeals from an adverse final decree entered after hearings on the merits.
In 1945, the appellant (sometimes hereinafter referred to as Esther) was married to the appellee, John S. Ellis (sometimes hereinafter referred to as John). In 1952, John acquired title to a certain parcel of land situated in Okeechobee County. In 1955, this property was purchased by one A. T. Ellis, who executed and delivered to John and Esther a note and mortgage securing the balance of the purchase price in the principal sum of $24,999.96, payable at the rate of $1,666.66 or more per year, with interest at the rate of 3½ per cent per year from date. According to John, he was unaware at the time of the transaction that the note and mortgage were executed to him and his wife. The first note payment was due on May 17, 1956, and the subsequent installments were to be made on or about May 17 of each year. In April of 1956, A. T. Ellis sold the property to Wallace Stevens, who assumed the aforesaid note and mortgage. Wallace Stevens made the 1956, 1957 and 1958 note payments as they fell due. These payments were made by checks payable to “J. S. and Esther M. Ellis.”
In February of 1959, Esther instituted suit for separate maintenance against John. After John answered and counterclaimed for a divorce, Esther amended her complaint to pray for a divorce. While the divorce suit was pending, the 1959 note payment became due. In order to pay this installment, Wallace Stevens executed and delivered his check (payable to “J. S. Ellis and Esther M. Ellis”) to the Okeechobee County Bank for transmittal to John and Esther. This was done upon the advice of T. W. Conely, Jr., attorney for both John and the Bank. This 1959 check was not cashed.
On April 12, 1960, the chancellor entered a final decree of divorce in favor of John. On the question of alimony for Esther, there had been testimony by John to the effect that except for the home place owned jointly by John and Esther, John’s only asset was the balance remaining unpaid on the aforesaid purchase money note and mortgage, which balance was “around $18,-000.00.” The chancellor awarded Esther *187 '$6,000.00 as lump sum alimony. A notice •of appeal from the final decree in the divorce case was filed, but the appeal was dismissed on joint stipulation of counsel for the respective parties.
In April of 1960, Wallace Stevens issued a check, payable to John alone, to •cover not only the 1960 installment hut also the previous year’s installment (the 1959 ■check having never been cashed). Wallace Stevens made the 1961 installment by a •check payable to the Clerk of the Circuit ■Court because he heard of the impending litigation of the instant cause between John and Esther. According to Esther, she has received none of the proceeds from the 1958, 1959, 1960 and 1961 installment payments on the note.
On June 1, 1961, Esther filed her complaint in the instant proceedings, seeking to foreclose the purchase money note and mortgage in which she claimed one-half interest. She requested an accounting of the monies allegedly due her under the note and mortgage. As a second cause of action, Esther sought damages for wrongful, fraudulent deprivation of such monies due her, plus interest, costs and attorney’s fees. Named as defendants were John S. Ellis, A. T. Ellis, Wallace Stevens and his wife, Okeechobee County Bank, and T. W. Conely, Jr.
An answer was filed by all the defendants (except A. T. Ellis, against whom a decree pro confesso was entered), and John S. Ellis filed a “counterclaim” against the plaintiff and A. T. Ellis, seeking to reform the note and mortgage by making them payable to himself alone instead of to Esther and himself jointly as husband and wife. After Esther answered the counterclaim, the cause came on for hearing before the same judge who heard and determined the divorce case.
On April 12, 1960, after hearing and considering the testimony and proofs, the chancellor entered his final decree. Foreclosure of the purchase money note and mortgage was denied, the court finding that all installments had been promptly paid or tendered, and that such payments are now in escrow with the Bank, or in the Registry of the Court, or had been received by John. The court found against the plaintiff on her claim that the defendants had fraudulently deprived her of her share of the proceeds of the purchase money note and mortgage, and accordingly denied the relief prayed for on that claim. The counterclaim for reformation was also denied. The chancellor found that the purchase money note and mortgage is owned by John and Esther as tenants in common. On the matter of accounting, the chancellor made reference to the proceedings in the divorce case:
“ * * * In determining what lump sum alimony award should be made to the wife, in view of the wife’s allegations in her complaint, the husband’s testimony concerning the ownership of said purchase money note and mortgage, no testimony being presented by the wife in opposition thereto, and counsel for neither party making any contrary assertion at final hearing, the Court considered the $18,000.00 remaining unpaid on said purchase money note and mortgage as an asset of the husband in its entirety and entered a final decree in the divorce suit * * * requiring the husband to pay $6,000.00 as a lump sum alimony award to the wife. * * *
******
“The Court, through its inclusion of the $18,000.00 remaining unpaid on said purchase money note and mortgage as an asset of the husband in its entirety, in its consideration of the case and in its determination of a fair and equitable lump sum alimony award, has inadvertently, as a matter of law, brought an unjust enrichment to the wife, for had it been drawn to the Court’s attention prior to the entry of the final decree in the divorce suit that, as a matter of law, the husband *188 and wife, after entry of the final decree, would own such note and mortgage as tenants in common, the Court would have denied alimony completely * * *.
* ⅝ ⅝ * Jfc ⅜
“Upon consideration, it is
“ORDERED, ADJUDGED AND DECREED That:
“1. The purchase money note and mortgage * * * is owned by the plaintiff, Esther M. Durham, also known as Esther M. Ellis, and the defendant, J. S. Ellis, also known as John Sollie Ellis, as tenants in common, each owning an undivided one-half interest therein, and the plaintiff is entitled to receive one-half of the balance remaining unpaid on said note and mortgage as of April 12, 1960, less $6,000.00, representing the lump sum alimony award in such amount the plaintiff received from John Sollie Ellis through the final decree in the divorce suit, and the defendant, J. S. Ellis, is entitled to receive the other one-half of the remaining unpaid balance on said note and mortgage as of said date, plus the $6,000.00 to be withheld from the plaintiff’s one-half thereof.
“2. The defendant, Okeechobee County Bank, is directed to pay all sums which it holds in escrow to be applied upon the payment of said note and mortgage into the Registry of the above entitled Court by paying same to Haynes E. Williams, as Clerk of said Court, and upon receipt of said funds, said Clerk is directed to pay one-half of all sums in the Registry of the Court for payment on said note and mortgage to the plaintiff, Esther M. Durham, and one-half thereof to the defendant, J. S. Ellis, except that the plaintiff’s one-half shall be paid by the Clerk direct to the defendant, J. S. Ellis, to be applied towards restitution for the said $6,000.00 lump sum alimony award, and also plaintiff shall receive a credit to be applied towards restitution for the said $6,000.00 lump sum alimony award of a sum equivalent to one-half of any monies actually received by the defendant, J. S. Ellis,, on said note and mortgage between April 12, 1960, and the date hereof.
“3. The defendants, Wallace Stevens, and Mary Stevens, his wife, shall pay one-half of the principal and interest hereafter maturing on said note and mortgage to the plaintiff, Esther M. Durham, and one-half thereof to the defendant, J. S. Ellis, except that said Wallace Stevens and Mary Stevens,, his wife, shall pay any remaining unpaid balance of said $6,000.00 from: plaintiff’s one-half direct to the defendant, J. S. Ellis, and after said $6,000.00 is fully restored to said defendant as above set forth, then plaintiff’s one-half to the plaintiff. * * * ”
All other relief sought by the plaintiff was denied, and John and Esther were each directed to pay one-half the costs incurred in the trial court.
From the foregoing final decree, the plaintiff appealed, contending, inter alia, that in the instant cause the lower court had no authority to order “restitution” of the $6,000.00 lump sum alimony awarded in the prior divorce suit. We find merit in. this contention.
The award of the lump sum alimony in the divorce suit had become final and res judicata, and Esther’s rights therein became vested. See Latta v. Latta, Fla.App.1961, 135 So.2d 443; Yandell v. Yandell, Fla.1949, 39 So.2d 554 (dicta); and 27A C.J.S. Divorce § 235, p. 1078. And by operation of law, upon entry of the final decree in the divorce suit, John and Esther became owners of the purchase money note and mortgage as tenants in common. § 689.15, Florida Statutes, F.S.A.; Powell v. Metz, Fla. 1952, 55 So.2d 915. This matter also became res judicata upon entry of the final decree, no appeal having been *189 perfected. See Cooper v. Cooper, Fla.1954, 69 So.2d 881; Finston v. Finston, 1948, 160 Fla. 935, 37 So.2d 423.
As authority for the course of action taken by it, the lower court cited the cases of Hazen v. Smith, 1931, 101 Fla. 767, 135 So. 813, and Masser v. London Operating Co, 1932, 106 Fla. 474, 145 So. 72. Neither of these decisions is applicable to the case at bar. It will be noted that in each of the cases relied upon by the chancellor below, and by the appellees here, reparation of injuries caused by the court’s wrongful adjudication was effected in the same cause in which the original adjudication was made and was prior to the termination of the court’s jurisdiction in each instance. In neither of the cases cited had the matter to be “corrected” become res judicata.[1] We recognize the principles that (1) a court has inherent power to afford redress when a wrong has been occasioned by its own erroneous act; [2] and (2) in exercising such power, a court may order a plaintiff to make restitution to the defendant so as to obviate the advantage obtained by the plaintiff through the rendition of the court’s erroneous judgment;[3] however, these principles have no application in the case at bar.
John’s counterclaim in Esther’s suit to foreclose the mortgage did not meet the requirements of a bill of review such as would permit an examination and alteration, change or modification of the divorce decree. 3 F.L.P, Bills of Review, § 2. The chancellor below denied that part of John’s counterclaim which sought reformation of the note and mortgage. There remained nothing more to the counterclaim than a request by John that the court in the instant proceedings modify and change the final decree it had entered in the divorce suit two years before.
The court below concluded that in the divorce decree of 1960, it had “inadvertently, as a matter of law, brought an unjust enrichment to the wife.” This alone, however, does not make the court’s judgment so erroneous that it was voidable. Moreover, it was because of John’s erroneous testimony to the effect that he was the sole owner of the note and mortgage that the court awarded in the divorce decree the lump sum alimony to Esther. The divorce decree is not one which is void on the face of the record. The court had jurisdiction of the subject matter and of the parties in'the divorce suit. The final decree in the divorce suit was not contrary to any settled principles of law or equity.
Even if it could be said that John’s discovery of the fact that the note and mortgage were made to himself and Esther constituted newly discovered evidence, it cannot be said that such evidence was not (and by the exercise of reasonable diligence could not have been) discovered until after the rendition of the divorce decree. The mortgage was a matter of record. The award of the lump sum alimony was not the result of an error on the part of the court, but to the contrary, it was the result of John’s erroneous testimony in the divorce proceedings. In the court below, it was error to relieve John of the consequences of his own mistake. That part of the decree which has the effect of awarding to John the sum of $6,000.00 from Esther’s one-half of the note and mortgage is reversed. See McEachin v. McEachin,. Fla.App.1963, 154 So.2d 894.
We affirm those parts of the final decree adverse to Esther, denying foreclosure of the mortgage and denying her the relief she sought in her second cause of action. The remaining questions determined by the final decree are not before this court for our consideration.
*190 The decree is affirmed in part and reversed in part with directions to the trial court to enter a decree in accordance with the views herein expressed.
KANNER and SHANNON, JJ., concur.

. Moreover, none of the authorities cited in the two cases are applicable in the instant cause. Nothing said in Revell v. Dishong, 1937, 129 Fla. 9, 175 So. 905, or in Holland v. McGill, 1932, 107 Fla. 444, 145 So. 210, 87 A.L.R. 171, is inconsistent with the holding of this Court.

. 8 Fla.Jur., Courts, § 42.

. Ibid.